STATE of Wisconsin, Plaintiff-Respondent,

v.

Monika S. LACKERSHIRE,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2005AP1189–CR. Oral argument September 12, 2006.
—Decided June 21, 2007.*

2007 WI 74

(Also reported in 734 N.W.2d 23.)

419

421

For the defendant-appellant-petitioner there were briefs and oral argument by *Steven P. Weiss,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

¶ 1. ANN WALSH BRADLEY, J.   The petitioner, Monika Lackershire, seeks review of a published court of appeals decision affirming a judgment of conviction and an order denying her post conviction motion for plea withdrawal.[1] Based on her guilty plea, she was convicted of one count of second-degree sexual assault of a child under Wis. Stat. § 948.02(2) (2003–04).[2] Lackershire contends that she was the victim, rather than the perpetrator, of a sexual assault. She therefore seeks to withdraw her plea on the grounds that her plea colloquy was defective and her plea was not knowing, intelligent, and voluntary.

¶ 2.   She argues that her plea colloquy was defective for two reasons. First, she asserts that the circuit court did not explain the nature of read-in charges. Second, she argues that the circuit court failed to satisfy the "factual basis" requirement under Wis. Stat. § 971.08(1)(b). As a consequence of the failure, she maintains that she did not realize that if she was the victim of rape, she could not have committed the

---

[1] *See State v. Lackershire,* 2005 WI App 265, 288 Wis. 2d 609, 707 N.W.2d 891 (affirming judgment and order of the Circuit Court for Pepin County, Dane F. Morey, Judge).

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

offense charged. In addition to her claim that the plea colloquy was defective, Lackershire argues that she pleaded guilty because she feared that the stress of a trial would affect her pregnancy, and that her plea was therefore involuntary.

¶ 3.   We determine that the court of appeals erred in concluding that the dismissed charges were read-in offenses. Because the record does not reflect that the dismissed charges were treated as read-ins, a read-in analysis is not warranted. Thus, whether Lackershire understood the nature of read-ins is not at issue.

¶ 4.   We also determine that Lackershire's plea colloquy was inadequate. The factual basis relied upon by the court in accepting Lackershire's plea raised a substantial question as to whether she had committed sexual assault of a child or had herself been the victim of rape. This necessitated that the circuit court make further inquiry to establish a sufficient factual basis to support Lackershire's plea under Wis. Stat. § 971.08(1)(b).[3]

¶ 5.   Finally, we determine that her fear about the effect of a trial on her pregnancy did not render her plea involuntary. Accordingly, we reverse the court of appeals and remand to the circuit court for a hearing on whether Lackershire's plea is knowing and intelligent.[4]

---

[3] Wis. Stat. § 971.08 provides in relevant part:

Pleas of guilty and no contest; withdrawal thereof. (1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:

. . . .

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

[4] Lackershire's petition for review and original brief to this court focused primarily on the treatment of read-in charges. In

¶ 6. In November 2003, Lackershire was charged with one count of second-degree sexual assault of a child pursuant to Wis. Stat. § 948.02(2).[5] The charge was based on an alleged act of intercourse with Stephen G., who was then 14, that took place in the evening around August 27, 2003, in the house where Stephen G. and Lackershire both resided. After the preliminary hearing in that case, Lackershire was charged with a second count of the same offense. That count was based

---

addition to the factual basis argument and the argument regarding voluntariness premised on her fear of the stress of trial, she also advanced an argument that she lacked an understanding of the elements of the offense. Before oral argument, she submitted supplemental authority on the question of elements.

After oral argument, we requested that both parties submit supplemental briefs. In her supplemental brief, Lackershire advances both the argument that the plea colloquy did not satisfy the factual basis requirement under Wis. Stat. § 971.08(1)(b) and that the plea colloquy inadequately addressed the elements of the offense. Ultimately, however, she advances that:

> [I]t is almost irrelevant under the facts of this case whether the issue is viewed as a defective colloquy on the elements, or as the failure to find an adequate factual basis .... Under any view, at the time of the plea Lackershire was not advised and did not understand that she was not guilty of any crime if, indeed, she was the victim of the boy's assault, as she claimed.

Because we determine that the plea colloquy was inadequate as a result of the circuit court's failure to make sufficient inquiry to satisfy the factual basis requirement, we do not address the argument regarding the elements of the offense.

[5] Wisconsin Stat. § 948.02(2) provides: "Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony."

on an alleged act of intercourse that took place in the shed adjacent to the house around the third week of August 2003 (prior to the incident alleged in the first count). In a separate case, Lackershire was charged with two counts of the same offense for alleged intercourse with Joseph C., who was also 14 at the time.

¶ 7.   Lackershire is a mentally and physically challenged person. She suffers from learning and cognitive disorders, has a tenth-grade education, and has a history of psychological problems. She is legally blind, and lives on Social Security Disability and Supplemental Security Income payments.

¶ 8.   The probable cause portion of the criminal complaint against Lackershire in the case involving Stephen G. consisted of an incident report by Jesse Van Alstine, chief of police for the Village of Pepin. In that report, Van Alstine describes talking to Matthew Tucke, Stephen G.'s older brother and Lackershire's boyfriend at the time. Tucke informed Van Alstine that Lackershire told him that Stephen G. had raped her.

¶ 9.   When Van Alstine interviewed Lackershire about the incident, she maintained that Stephen G. had raped her. The incident report relates Lackershire's version of the incident as follows:

> She stated that she also believed that the incident was around August 27, 2003 as Matthew and his mother had left . . . and that she and [Stephen G.] were in the living room together . . . . She stated that [Stephen's brother and father were asleep]. She stated that continuously that night [Stephen G.] had asked her to have sex with him and she continuously told him no that she would not do this because she loved his brother, Matthew, and would not do that to him. Also, that she could get into trouble if she had sex with him because of his age. She stated that during this time period, [Stephen

426

G.] walked over to her, pulled the blanket that she had covered herself up with, pulled her shorts down and stuck his penis in her. She stated that due to embarrassment, she placed her face into the pillow and said and did nothing, other than that she had said no several times.

¶ 10. Van Alstine also interviewed Stephen G. about Lackershire's accusation. He stated they had consensual intercourse. The incident report relates Stephen G.'s version of the incident as:

[Stephen G.] stated that on the night in question, which he believed was August 27, 2003, that after his father and brother . . . had gone to sleep, and his mother and brother, Matthew [had left], that he asked Monika to have sex with him. He stated that he asked her approximately three to four times and that each time she said no. After the third or fourth time Monika went and laid down on the couch on her stomach. At which time [Stephen G.] asked her one more time if she would have sex with him. At this time Monika gave him a look that he felt showed that she was interested and she said ["]what do you think.["] At this time he walked over toward her . . . . at which time they engaged in sexual intercourse.

[Stephen G.] stated that at no time after she said ["]what do you think["] did she say no or protest or in any way try to stop [him] from having sex with her.

¶ 11. At the preliminary hearing in the case, Stephen G. testified about having intercourse with Lackershire in his home. He confirms that he was the one to initiate intercourse:

Q: Where did that event take place?

A: That happened in the living room.

Q: In the living room of your family home?

A: Yep.

Q: And, once again, how did that come about?

A: I don't really know. I had asked her, because of the time before. That's kind of how it came about.

Q: You asked her if she would have sex with you?

A: Yah.

¶ 12. Lackershire negotiated a plea with the State. She agreed to plead guilty to one count of second-degree sexual assault of a child for the incident involving Stephen G. that occurred in the living room of his home. The State agreed to dismiss the second count in Stephen G.'s case and both counts in the case involving Joseph C. The plea questionnaire that Lackershire completed stated only that the non-charged offenses were to be dismissed, and made no mention of read-ins.

¶ 13. At the plea hearing,[6] the district attorney told the court that the State believed it appropriate to dismiss those counts, and that there was "ample opportunity for punishment, penalty, and rehabilitation, given a conviction on one . . . ." Throughout the plea hearing, the court referred to the non-charged offenses as being dismissed. For example, the court established that Lackershire was pleading guilty in part because the State agreed to dismiss other charges:

> The Court: I presume and believe that one of the reasons that you're entering the plea to this first count is that, by the plea, the State is agreeing to dismiss several other counts that are pending in this court.

[6] Robert W. Radcliffe, reserve judge of the Circuit Court for Pepin County, presided over the plea hearing.

428

Is that true?

Lackershire: Yes.

The court also confirmed with Lackershire's attorney that the charges would be dismissed, stating that "It's my assumption that she is accepting this plea agreement partially on the basis that the other charges that are pending would be dismissed." Nowhere in the plea hearing do the parties or the court indicate that the dismissed charges would be read in at sentencing.

¶ 14. Regarding the offense charged, Lackershire's attorney told the court he had "gone over the elements with my client." The court had the following exchange with Lackershire, in which it described the offense charged as consisting of sexual intercourse with a child under 16 years old:

> The Court: The Information in this case—and referring specifically to the first count in the Information of 03–CF-32 [involving Stephen G.]—alleges that, in August of 2003—that would have been last August—in this county, you had sexual intercourse with a child under the age of sixteen years.
>
> Do you understand that?
>
> Lackershire: Yes.
>
> The Court: Is that true?
>
> Lackershire: Yes.
>
> The Court: Do you understand it's alleged that this is a violation of Section 948.02 of the Wisconsin Statutes?
>
> Lackershire: Yes.

¶ 15. The court established that the factual basis for Lackershire's plea was the criminal complaint and testimony at the preliminary examination. However, at

no point did the court question Lackershire about her contention that Stephen G. had raped her on the occasion of the offense charged. Neither did the court establish that Lackershire understood that if Stephen G. had raped her, she could not be guilty of sexual assault. The court accepted Lackershire's plea, and ordered a presentence investigation (PSI).

¶ 16. The circuit court sentenced Lackershire to three years initial confinement and six years of extended supervision. In explaining its decision in reaching the sentence, the court made no mention of the dismissed charges being treated as read-ins. Likewise, neither the State nor the defense made any mention that the dismissed charges were to be treated as read-in offenses. However, the PSI contained a description of each dismissed charge, and it captioned those descriptions as "read-ins." Nowhere else did it describe the charges as read-ins.

¶ 17. Lackershire moved to withdraw her plea, or to have her sentence modified. She stated that there had not been a specific recitation of the elements of the crime to which she had pleaded. She also posited, based on a review of the PSI, that the dismissed charges had been treated as read-ins at sentencing, and that she had not understood that they would be treated that way. Further, she argued that her fear of harm to her pregnancy caused by the stress of trial served to coerce her into pleading guilty.

¶ 18. At the hearing on the postconviction motion, the court stated that it thought Lackershire's plea hearing had been thorough, that Lackershire had understood everything, and that her motion to withdraw was meritless:

> And the Court has read every sentence of the plea hearing. It is very thorough. In fact, the Judge even

asked her if she wanted to withdraw her plea. And she was represented by counsel. She did not withdraw her plea. She said she fully understood everything. Her counsel was there.

So this is a meritless motion, in the Court's opinion, sir. I'm not going to waste a lot of the Court's time on it because I'm incorporating in my opinion the entire transcript of the plea hearing by Judge Radcliffe, which was very thorough and very detailed.

¶ 19. Despite its view that Lackershire's motions were without merit, the court allowed Lackershire to testify regarding her understanding of the plea. However, the court prefaced Lackershire's testimony by stating:

So you can—You're a lawyer. You can do what you want here. I'll give you permission to make as good of a record as you want to. But I want you to know that that's what you're doing.

¶ 20. Lackershire testified that she had not had any discussions with her attorney about read-ins. She also testified that she believed she had a defense to the charge for which she had been sentenced, namely that the intercourse underlying that charge was rape:

Q: Did you have any questions, when you were pleading to the one, exactly what you were pleading to?

A: Well, yes, because of what the crime element is and what I continued to testify as—

Q: Did you believe you had a defense to the charge?

A: Yes.

Q: What was that?

A: I was raped.

431

¶ 21.   Finally, Lackershire testified that she had been pregnant during the plea negotiations and sentencing, and that she had been hospitalized in late February 2004 due to the stress of the proceedings. She stated that she had been advised to eliminate stress, and that she had agreed to plead guilty in order to avoid the stress of trial and its potential harm to her pregnancy.

¶ 22.   After Lackershire's testimony, the court immediately stated that:

> I haven't heard anything here to change my mind.
>
> . . . .
>
> And these are very self-serving statements by [Lackershire]. There's nothing stated that changes the Court's ruling.
>
> We're over with this case.

¶ 23.   Lackershire appealed. The court of appeals determined that knowledge of read-in charges "is not required for a defendant to enter a knowing, intelligent, or voluntary plea." *State v. Lackershire,* 2005 WI App 265, ¶ 15, 288 Wis. 2d 609, 707 N.W.2d 891. It also determined that Lackershire's plea colloquy was not otherwise deficient. *Id.,* ¶ 10. Finally, it concluded that Lackershire's pregnancy concerns did not render her plea involuntary. *Id.,* ¶¶ 19–20.

II

¶ 24.   Lackershire contends that her guilty plea was not knowing, intelligent, and voluntary. She asserts that she is therefore entitled to withdraw her plea. Whether a plea was knowingly, intelligently, and voluntarily entered presents a question of constitutional fact. *State v. Brown,* 2006 WI 100, ¶ 19, 293 Wis. 2d 594, 716 N.W.2d 906. "We accept the circuit court's findings of

historical and evidentiary facts unless they are clearly erroneous, but we determine independently whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary." *Id.*

¶ 25. Specifically, Lackershire asserts that her plea colloquy was defective. Whether a plea colloquy conforms to the statutory requirements is a question of law that we review independently of the determinations rendered by the circuit court and court of appeals. *Id.*, ¶ 21.

### III

¶ 26. Lackershire asserts that her plea colloquy was defective in that the circuit court failed to fulfill its plea-taking duties in two ways. First, the court failed to advise her that the dismissed counts would be read in at sentencing and to explain that read-in charges could have consequences on her sentence. Second, the circuit court failed to satisfy the "factual basis" requirement under Wis. Stat. § 971.08(1)(b) because it did not "make such inquiry as satisfies it that [Lackershire] in fact committed the crime charged." As a result of the failure, she did not realize that if she were the victim of rape, she could not have committed the offense charged. We address each in turn.

¶ 27. Lackershire based her motion to withdraw her plea, in part, on the circuit court's failure to explain read-ins,[7] and premised her appeal, in part, on the

---

[7] This court explained the procedure for read-in charges in *Austin v. State,* 49 Wis. 2d 727, 183 N.W.2d 56 (1971). When charges are read in during sentencing, the defendant admits to

433

claim that the circuit court read in the dismissed charges. Not surprisingly, therefore, the court of appeals analyzed this as a read-in case. Our review of the record, however, reveals that this is not a read-in case.

¶ 28. Nowhere in the transcript of the plea hearing, the transcript of the sentencing hearing, the transcript of the adjourned sentencing hearing, or the plea questionnaire do either the parties or the court refer to the dismissed charges as being read in for the purpose of sentencing. The only place in the record where the charges are characterized as read-ins is the caption reference in the PSI. Without anything in the record establishing that the State and Lackershire agreed to read-in charges, or that the circuit court treated the dismissed charges as read-ins, we cannot treat this as a read-in case. Accordingly, we determine that the court of appeals erred in concluding that the dismissed charges were read-in offenses, and whether Lackershire understood the nature of read-ins is not at issue.[8]

---

having committed the underlying crimes, but does not plead guilty to the charges, and therefore is not sentenced for those charges. However, such admitted, uncharged offenses are considered in the sentencing for the offenses charged. "Thus under the read-in procedure, the defendant does not run the risk of consecutive sentences or even concurrent sentences. His only risk is a longer sentence for the crime charged but this sentence cannot exceed the maximum." *Id.* at 732. Read-in charges do not constitute prior convictions and cannot be used under the state's repeater statute, Wis. Stat. § 973.12. *Id.* Read-ins also serve a role in setting restitution. *Robinson v. City of W. Allis,* 2000 WI 126, ¶ 42, 239 Wis. 2d 595; 619 N.W.2d 692; *State v. Szarkowitz,* 157 Wis. 2d 740, 753–54, 460 N.W.2d 819 (1990).

[8] We do not adopt the court of appeals' determinations that read-in charges are merely "collateral consequences" of a plea, and that therefore information about read-ins "is not a prerequisite to entering a knowing and intelligent plea." *Lackershire,*

¶ 29. Lackershire's second argument centers on the somewhat unique posture of this case. A violation of Wis. Stat. § 948.02(2) is generally viewed as a strict liability offense. Unlike other sexual assault offenses, where consent of the victim may be a central issue, the consent of the child in a Wis. Stat. § 948.02(2) violation is not relevant. Yet, here, where we have an assertion that it was the defendant who did not consent to the intercourse, that it was she who was raped by the child, then the issue of her consent becomes paramount. If the defendant was raped, the act of having sexual intercourse with a child does not constitute a crime. Wis. Stat. § 948.01(6).

¶ 30. In her second argument, Lackershire advances that the circuit court did not satisfy the factual basis requirement of Wis. Stat. § 971.08(1)(b). In her motion to withdraw her plea, Lackershire did not use the words "factual basis." Rather, she asserted that the circuit court did not adequately explain the elements of second-degree sexual assault of a child, that she did not understand that being raped would preclude her from being charged with such an assault, and that her plea

288 Wis. 2d 609, ¶ 15 (citing *State v. Byrge,* 2000 WI 101, ¶ 61, 237 Wis. 2d 197, 614 N.W.2d 477). Those determinations appear to extend existing law. *See Austin v. State,* 49 Wis. 2d 727, 734, 183 N.W.2d 56 (1971) (stating that "[a] plea agreement should always be made a matter of record whether it involves a recommendation of sentencing, a reduced charge, a *nolle prosequi* of charges or read ins with an agreement of immunity."); *Garski v. State,* 75 Wis. 2d 62, 77, 248 N.W.2d 425 (1977) (providing that "[t]he defendant should be advised by the trial court, on the record, of the effect of the read-ins . . . ."). We decline to engage in further analysis regarding the circuit court's obligation to explain the nature of read-in offenses in a case where the record demonstrates that the dismissed charges were not treated as read-ins at either the plea or sentencing.

colloquy was therefore inadequate under Wis. Stat. § 971.08(1)(a). She similarly framed the issue under § 971.08(1)(a) in her brief to this court. However, at oral argument it appeared that the issue may not have been appropriately framed and this court asked for supplemental briefs.

¶ 31.  In her supplemental brief, Lackershire made it clear that her argument was that she had been raped by Stephen G. and that her plea colloquy was deficient because she did not understand that being raped would preclude the charge. Thus, she asserted, the plea colloquy could be deficient either because the circuit court did not fulfill its statutory obligations under § 971.08(1)(a) by not stating the elements or because it did not establish a factual basis under § 971.08(1)(b).

¶ 32.  Lackershire has consistently maintained that she was raped by Stephen G. Admittedly, it would have been preferable for her to have been explicit that her motion to withdraw her plea was based on the failure to establish a factual basis. Nevertheless, it has been clear from the time she filed the motion that her argument with respect to the elements was based upon her assertion that she was raped, and that she did not understand that having been raped is inconsistent with her having sexual intercourse for the purpose of second-degree sexual assault of a child.

¶ 33.  Wisconsin Stat. § 971.08(1)(b) provides that before a circuit court accepts a defendant's guilty plea, it must "make such inquiry as satisfies it that the defendant in fact committed the crime charged." This court has determined that establishing a sufficient factual basis requires a showing that "the conduct which the defendant admits constitutes the offense charged . . . ." *White v. State,* 85 Wis. 2d 485, 488,

436

271 N.W.2d 97 (1978) (quoting *Ernst v. State*, 43 Wis. 2d 661, 674, 170 N.W.2d 713 (1969)); *State v. Black*, 2001 WI 31, ¶ 21 n. 8, 242 Wis. 2d 126, 624 N.W.2d 363.

¶ 34. The duties established in Wis. Stat. § 971.08 are "designed to ensure that a defendant's plea is knowing, intelligent, and voluntary." *Brown*, 293 Wis. 2d 594, ¶ 23. In our recent decision in *State v. Kelty*, for example, we allowed that a plea may not be "knowing, intelligent, and voluntary because the plea colloquy was defective in discussing the elements of the crime or the factual basis" for the charges. 2006 WI 101, ¶ 44, 294 Wis. 2d 62, 716 N.W.2d 886. Thus, establishing a factual basis under § 971.08(1)(b) is necessary for a valid plea.[9]

¶ 35. Specifically, the obligation that the circuit court establish a sufficient factual basis helps ensure

---

[9] The dissent objects that Lackershire did not use the words "factual basis" and that this should preclude plea withdrawal. Dissent, ¶ 90. This objection misses the point. Lackershire has consistently claimed that she was raped, and that she did not understand that being raped would preclude the crime with which she had been charged. Thus, her assertions in the motion and at the hearing on the motion comport with the requirement that Lackershire "(1) make a prima facie showing of a violation of Wis. Stat. § 971.08(1) or other court-mandated duties . . . ; and (2) allege that the defendant did not know or understand the information that should have been provided at the plea hearing." Dissent, ¶ 78 (citing *State v. Brown*, 2006 WI 100, ¶ 39, 293 Wis. 2d 594, 716 N.W.2d 906). To preclude this court's review of the issue on the ground that Lackershire did not use the magic words "factual basis" in her motion, as the dissent would have it, ignores the essence of her argument. To contend that the issue in this case was not really before the court is at odds with the record.

that the defendant's plea is knowing and intelligent.[10] The factual basis requirement "protects a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *State v. Thomas,* 2000 WI 13, ¶ 14, 232 Wis. 2d 714, 605 N.W.2d 836. Likewise in *Morones v. State,* this court noted that "[t]he purpose of the statutory requirement for a court inquiry as to basic facts is to protect the defendant who. pleads guilty voluntarily and understanding the charge brought but not realizing that his conduct does not" constitute the charged crime. 61 Wis. 2d 544, 552, 213 N.W.2d 31 (1973); *see also Broadie v. State,* 68 Wis. 2d 420, 423, 228 N.W.2d 687 (1975). A defendant's failure to realize that the conduct to which she pleads guilty does not fall within the offense charged is incompatible with that plea being "knowing" and "intelligent."

¶ 36. The essence of the factual basis requirement and its relation to whether a plea is knowing and intelligent is illustrated by this court's decision in *White v. State,* 85 Wis. 2d 485, 271 N.W.2d 97 (1978). In that case, the defendant pleaded guilty to the charge of stealing a chainsaw valued at $150 and was sentenced based on the value of the chainsaw being greater than $100. He sought to withdraw his plea, claiming that the circuit failed to establish a factual basis that the value of the saw was $150.

---

[10] This court has in the past discussed the factual basis requirement in terms of whether a plea is voluntary. *See Ernst v. State,* 43 Wis. 2d 661, 673, 170 N.W.2d 713 (1969). More recently, the factual basis requirement has been viewed as "distinct from the voluntariness requirement." *White v. State,* 85 Wis. 2d 485, 491 (1978); *State v. Thomas,* 2000 WI 13, ¶ 14, 232 Wis. 2d 714, 605 N.W.2d 836.

¶ 37. There was no question that White's plea was voluntary, and that White understood the nature of the theft charge. However, the court determined that the record did "not suggest that White had any knowledge of the value of the saw." *Id.* at 491. Thus, White was in the position of "pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct [did] not actually fall within the charge." *Id.* (citation omitted).

¶ 38. In the present case, the circuit court's inquiry into the factual basis for the plea (that is, its inquiry into whether Lackershire "in fact committed the crime charged") was likewise insufficient. After the colloquy there remained a substantial question as to whether the facts that formed the basis of Lackershire's plea constituted the offense charged. Because of this substantial question, the plea colloquy failed to demonstrate that Lackershire realized that if the underlying conduct was a sexual assault upon her, that conduct could not constitute the offense charged. Like the defendant in *White,* Lackershire was potentially in the position of pleading guilty without realizing that her conduct did not constitute the offense charged.

¶ 39. At the plea hearing, the court noted that the criminal complaint and the testimony from the preliminary hearing provided the factual basis for the offense charged. However, neither of these documents unequivocally supports the conclusion that Lackershire admitted to conduct that "constitutes the offense charged." The offense to which Lackershire pleaded guilty was the first count of the indictment in Stephen G.'s case. That count was based upon the sexual intercourse between Lackershire and Stephen G. that took place around August 27, 2003, in the living room of the house in which they resided.

439

¶ 40. However, Chief Van Alstine's incident report, which formed the probable cause portion of the complaint, makes it clear that Lackershire maintained that Stephen G. had raped her on that occasion. In all of her statements to Van Alstine, Lackershire asserted that Stephen G. had "continuously" asked her to have sex, that she had refused, and that finally Stephen G. had walked over to her, pulled off a blanket and her shorts, and raped her, despite her continuing to tell him "no."

¶ 41. Stephen G.'s statements to Van Alstine confirm Lackershire's assertion that Stephen G. had repeatedly asked her to have sex, and that she had repeatedly refused. Further, his statements do not suggest that Lackershire asked or approached him for sex. His preliminary hearing testimony about the offense charged is scant, and it fails to establish that Lackershire consented to having sex with him on that occasion. He testified that he had asked her to have sex, that she had not asked him, and that his belief that she wanted to have sex with him did not derive from her verbal consent. Thus, there is a substantial question as to whether these facts, which form the basis of Lackershire's plea, constitute the offense charged. That substantial question obligated the circuit court to make additional inquiry, pursuant to § 971.08(1)(b), to ensure that Lackershire in fact committed the crime charged.

¶ 42. Resolving that question is vital to fulfill the purpose of the factual basis requirement, which is to protect the defendant who pleads guilty "without realizing that his conduct does not actually fall within the charge." *Thomas*, 232 Wis. 2d 714, ¶ 14; *White*, 85 Wis. 2d at 491. This is precisely the concern here. Lackershire's plea colloquy did not demonstrate whether Lackershire realized that if the underlying

conduct was a sexual assault upon her, then her conduct does not actually fall within the charge.[11]

¶ 43.  During the plea colloquy, the circuit court assessed her understanding of the offense charged in the following exchange:

[11] The dissent concludes that the statutory requirement that a circuit court establish an adequate factual basis for the offense charged amounts to a "new" procedure. Dissent, ¶ 75. It contends that the possibility that a defendant may withdraw her plea based on the circuit court's failure to fulfill a statutory obligation somehow creates a "new obligation" that a judge considering a plea withdrawal motion "will have to be on the lookout for substantial questions and red flags in the record, even if the defendant did not raise them." *Id.*, ¶ 95. This assertion is a disservice because it is both incorrect and may lead to a misinterpretation of the holding of this case.

The requirement that judges establish a factual basis is statutory, Wis. Stat. § 971.08(1)(b), and does not come from this opinion. There is nothing "new" about a statutory requirement. Further, as explained in the text, Lackershire's motion was sufficient to make clear that the motion was based on her failure to understand that having been raped is incompatible with her committing the crime charged. That such a failure is better characterized as implicating § 971.08(1)(b) rather than § 971.08(1)(a) should not prevent review, contrary to the dissent's view. Moreover, the facts in the record relevant to her motion regarding the elements are precisely the same facts as the ones relevant to the factual basis requirement. Thus, the dissent's claims that "a prima facie showing may spring from the record itself," dissent, ¶ 91, and that "a judge will have to be on the lookout for substantial questions and red flags in the record, even if the defendant did not raise them," *id.*, ¶ 95, misconstrue the case.

Finally, the dissent's conjecture that this decision somehow signals there is "[n]o need for a motion that raises [a] 'substantial question'" (*id.*, ¶ 91) is hyperbole. The motion in this case raised a substantial question because it was based on Lackershire's consistent assertion that she was raped.

The Court: The Information in this case . . . alleges that, in August of 2003—that would have been last August—in this county, you had sexual intercourse with a child under the age of sixteen years.

Do you understand that?

Lackershire: Yes.

The Court: Is that true?

Lackershire: Yes.

The Court: Do you understand it's alleged that this is a violation of Section 948.02 of the Wisconsin Statutes?

Lackershire: Yes.

This description of the conduct underlying the charge —that Lackershire had sexual intercourse with a child under 16 years old—is on its face compatible with Lackershire's claim that Stephen G. raped her. Under the facts of this case, however, merely stating that the charge involved intercourse and a child served to obscure the fact that being the victim of rape negates a charge of sexual assault. Similarly, it obscures the fact that if the underlying conduct was a sexual assault of Lackershire, then that conduct does not constitute the offense charged. Given the unique circumstances of this case, the circuit court's description of the charge failed to protect Lackershire from pleading guilty without realizing that if the underlying conduct was a sexual assault upon her, then her conduct does not actually fall within the charge.

¶ 44. We find support for this view in the court of appeals decision in *State v. Olson,* 2000 WI App 158, 238 Wis. 2d 74, 616 N.W.2d 144. In that case, the defendant, who was 18 years old, was charged with second-degree sexual assault of a child, but claimed that she had in

fact been the victim of rape. The circuit court denied the defendant's request for a jury instruction that the state had to prove that the intercourse was the result of the defendant's intentional acts or upon her "affirmative instructions." The defendant was convicted of the charge. *Id.*, ¶ 1. The court of appeals reversed the judgment. Noting that there was evidence that the defendant had reported the incident as a sexual assault upon her, it determined that "the act or acts which bring about the sexual intercourse must be, . . . in the words of [Wis. Stat. § 948.01(6)], undertaken 'upon the defendant's instruction.' " *Id.*, ¶ 13. It therefore determined that under those facts, the defendant was entitled to a jury instruction to that effect. *Id.*

¶ 45.   Like the present case, in *Olson* there was no dispute that a sexual assault took place, but there was a question as to whether it was an assault by the defendant or an assault of the defendant. In *Olson,* the proposed jury instruction served to establish the understanding that being the victim of rape would negate the charge that the defendant committed the assault.

¶ 46.   In the present case, with similar facts, we determine that the circuit court had an obligation to make sufficient inquiry to establish a factual basis exists for the crime charged. Here, the preliminary hearing transcript and the complaint, which formed the factual basis upon which the circuit court relied, should have raised a red flag prompting further inquiry. Such inquiry is required in order to protect Lackershire from pleading guilty without realizing that the conduct she admitted does not constitute the offense charged.[12]

___

[12] The dissent contends that an allegation of rape constitutes a defense to the charge of second-degree sexual assault of a child, and that "Lackershire's admission that she had sexual

Because a substantial question exists whether this is a sexual assault of or by Lackershire, and because the colloquy did not establish that Lackershire realized that if the underlying conduct was an assault upon her, she could not be guilty of the offense charged, the circuit court failed to satisfy the factual basis requirement.

## IV

¶ 47. Having determined that the circuit court failed to make sufficient inquiry under Wis. Stat. § 971.08(1)(b), we must address the appropriate remedy. In *State v. Bangert,* this court set out "the proper remedy for failure to follow . . . the procedures set forth in sec. 971.08(1)." 131 Wis. 2d 246, 272–73, 389 N.W.2d 12 (1986). Under *Bangert,* where a defendant seeks to withdraw her plea and alleges a deficiency in the plea colloquy, she must first make a prima facie showing of a violation of § 971.08(1) or other mandatory procedure and allege that she did not know or understand information that should have been provided at the colloquy. *Id.* at 274. If the defendant fulfills these requirements, the court must hold an evidentiary hearing at which the state has the opportunity to show by clear and convincing evidence that the defendant's plea was knowing,

intercourse (i.e., affirmatively acted or directed action) means that her admitted conduct did not amount to a rape defense." Dissent, ¶ 108. This argument begs the question. The underlying issue in this case is whether Lackershire understood that being raped is incompatible with having sexual intercourse for the purposes of second-degree sexual assault of a child. To conclude that because Lackershire admitted to having sexual intercourse entails that she admitted to affirmatively acting or directing action simply assumes the answer to the question that the circuit court ought to have addressed in the plea hearing, and which brings the case before this court.

voluntary, and intelligent. *Id.; Brown,* 293 Wis. 2d 594, ¶ 40. *Bangert* encompasses the requirement in § 971.08(1)(b) to "[m]ake such inquiry as satisfies it that the defendant in fact committed the crime charged."

■

¶ 48.  In some ways, however, applying the *Bangert* procedure for failure to satisfy the factual basis requirement is an awkward fit. Factual basis cases typically involve the question of whether undisputed facts actually constitute the crime charged. Where undisputed facts cannot constitute the crime charged as a matter of law, the defendant is allowed to withdraw her plea to prevent a manifest injustice. *State v. Smith,* 202 Wis. 2d 21, 25, 539 N.W.2d 232 (1996).

¶ 49.  In *State v. Johnson,* for example, the defendant sought to withdraw his guilty plea for armed robbery on the ground that there had been no asportation, and that asportation is necessary for there to be an armed robbery. 207 Wis. 2d 239, 242, 558 N.W.2d 375 (1997). The state did not dispute that there had been no asportation. *Id.* This court determined that asportation is required for armed robbery, and that the defendant was therefore entitled to withdraw his plea. *Id.; see also Black,* 242 Wis. 2d 126, ¶ 1 (question of whether undisputed fact that felon handled pistol satisfied factual basis for charge of felon in possession of handgun).

■

¶ 50.  In the present case, however, the facts are in dispute precisely because the circuit court failed to conduct a sufficient inquiry into the factual basis of the offense charged. The plea colloquy failed to establish whether the underlying conduct was a sexual assault of Lackershire or by Lackershire. This is not a case in which there are undisputed facts. Rather it is a case in

445

which there is a substantial question as to factual basis, which raises doubts as to whether Lackershire's plea was knowing and intelligent.

¶ 51.   In a number of cases subsequent to *Bangert,* this court has reiterated that the failure to fulfill the § 971.08(1)(b) factual basis requirement entitles the defendant to the *Bangert* procedure. *Kelty,* 294 Wis. 2d 62, ¶ 44; *Brown,* 293 Wis. 2d 594, ¶¶ 35–36; *State v. Trochinski,* 2002 WI 56, ¶ 17, 253 Wis. 2d 38, 644 N.W.2d 891; *State v. Bollig,* 2000 WI 6, ¶¶ 48–49, 232 Wis. 2d 561, 605 N.W.2d 199; *State v. Van Camp,* 213 Wis. 2d 131, 140–41, 569 N.W.2d 577 (1997). Accordingly, we determine that it is appropriate here.

¶ 52.   Under the *Bangert* procedure, where a defendant seeks to withdraw a plea after sentencing and alleges that the plea colloquy is defective, the defendant must first make a prima facie showing that the circuit court violated Wis. Stat. § 971.08(1) or other plea requirements.[13] *Bangert,* 131 Wis. 2d at 274. In addition, the defendant must allege that she did not know or understand the information that the court should have provided at the plea hearing. *Id.; Brown,* 293 Wis. 2d 594, ¶ 39. Once the defendant has made a prima facie case and alleged a lack of knowledge or understanding, the burden shifts to the state "to show by clear and convincing evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered," despite the inadequacy of the plea hearing. *Bangert,* 131 Wis. 2d at 274. To afford the state the opportunity to make such a showing, the circuit court must hold a

---

[13] For a catalog of the statutory and court-mandated duties of circuit courts at plea hearings, see *Brown,* 293 Wis. 2d 594, ¶ 35.

postconviction evidentiary hearing. *Brown,* 293 Wis. 2d 594, ¶ 40 (citing *Bangert,* 131 Wis. 2d at 274).

¶ 53. Because the circuit court had an obligation to make further inquiry as to the factual basis of the offense charged under § 971.08(1)(b), Lackershire has satisfied the first condition necessary for her to withdraw her plea. She has established a prima facie showing that her plea colloquy was defective.

¶ 54. In her motion to withdraw her plea, Lackershire stated that "she did not fully understand the elements of the crime to which she pled, that she did not fully understand the consequences of her plea, and that her plea was not knowing or voluntary." Further, she states that "she has always maintained that she was raped."

¶ 55. Lackershire's allegation of lack of understanding focuses on the effect of being raped in relation to the charge of sexual assault of a child. We therefore determine she has alleged that she did not know or understand information that the court should have provided at the plea hearing, and that Lackershire fulfills the second requirement for plea withdrawal.

¶ 56. Once the defendant meets those two requirements, the court must hold a postconviction evidentiary hearing at which the state is given an opportunity to show by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary, despite the identified inadequacy of the plea colloquy. *Brown,* 293 Wis. 2d 594, ¶ 40 (citing *Bangert,* 131 Wis. 2d at 274). We therefore conclude that such a hearing is required in this case. Because Lackershire's plea colloquy was defective due to the circuit court's

447

failure to make further inquiry to establish an adequate factual basis, the focus of the inquiry will be on whether Lackershire's plea was knowing and intelligent. Specifically, it will focus on whether Lackershire realized that if she was raped, her conduct would not actually fall within the charge.

¶ 57. The circuit court did hold a hearing on Lackershire's motion to withdraw her plea. However, that hearing did not provide an adequate opportunity for the State to demonstrate that there was a sufficient factual basis, and that Lackershire's plea was therefore knowing and intelligent. The circuit court rejected out of hand Lackershire's contention that her plea colloquy was defective, calling it "meritless" and "plain not sensible," in effect holding that Lackershire had not made the prima facie case necessary to shift the burden to the State. The State therefore did not have the opportunity to present evidence with the understanding that it bore the burden of showing that Lackershire's plea was knowingly and intelligently entered.

¶ 58. While the court allowed Lackershire to present evidence, it implied that hearing evidence would not bear on its decision. It prefaced Lackershire's presentation of evidence by stating that "[y]ou can do what you want here. I'll give you permission to make as good of a record as you want to. But what I want you to know that that's what you're doing."

¶ 59. A motion hearing where the court implies that evidence will not affect its decision cannot be characterized as an "evidentiary hearing at which the state is given an opportunity to show by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary, despite the identified inadequacy of the plea colloquy." *Brown*, 293

Wis. 2d 594, ¶ 40. The State asks that if this court determines that the circuit court erred, then the State be provided the opportunity to show that Lackershire's plea was knowing, intelligent, and voluntary. Although Lackershire submits that the State did have an opportunity to show that her plea was adequate, she recognizes that the record of the motion hearing reflects that the opportunity was limited. We agree that the State has not had the opportunity to present evidence to which it is entitled under *Bangert.* We therefore remand the case to the circuit court for an evidentiary hearing.

¶ 60.  In determining whether the plea was knowingly and intelligently made, the circuit court may look at the totality of the circumstances. As we set out in our recent decision in *State v. Thomas,* in determining whether a defendant's admitted conduct constitutes the charged crime:

> [A] court may look at the totality of the circumstances when reviewing a defendant's motion to withdraw a guilty plea to determine whether a defendant has agreed to the factual basis underlying the guilty plea. The totality of the circumstances includes the plea hearing record, the sentencing hearing record, as well [as] the defense counsel's statements concerning the factual basis presented by the state, among other portions of the record.

*Thomas,* 232 Wis. 2d 714, ¶ 18.

¶ 61.  Moreover, in *Bangert,* this court determined that when a defendant has shown a prima facie violation of § 971.08(1)(a) and alleged that she did not know or understand information that should have been pro-

vided at the plea hearing, the state may use any evidence to determine that the plea was knowing and voluntary:

> The state may then utilize any evidence which substantiates that the plea was knowingly and voluntarily made. . . . The state may examine the defendant or defendant's counsel to shed light on the defendant's understanding or knowledge of information necessary for him to enter a voluntary and intelligent plea.

*Bangert,* 131 Wis. 2d at 274–275. We determine that the state should receive similar latitude where the plea hearing is deficient under § 971.08(1)(b).

## V

■■■■■

¶ 62.    Finally, we consider Lackershire's argument that her plea was involuntary because she feared that the stress of trial would affect her pregnancy. Lackershire testified that on February 24 and 25, 2004, she was hospitalized with complications of her pregnancy, and that upon her discharge, she was told to maintain bed rest and to avoid stressful situations in order to protect her pregnancy. She maintains that allowing her to withdraw her plea is necessary to avoid a manifest injustice. We disagree.

¶ 63.    This court explained the nature of voluntary pleas in *Craker v. State,* 66 Wis. 2d 222, 223 N.W.2d 872 (1974). In *Craker,* the defendant argued that his guilty plea was not voluntary on the ground that he was compelled to plead guilty because of his moral scruples and family pressure rather than his legal guilt. In determining that the defendant's plea was voluntary, the *Craker* court cited to *Rahhal v. State,* 52 Wis. 2d 144, 151–52, 187 N.W.2d 800 (1971) for the proposition

that ". . . [t]he distinction between a motivation which induces and a force which compels the human mind to act must always be kept in focus. When the defendant is not given a fair or reasonable alternative to choose from, the choice is legally coerced. . . ." *Craker,* 66 Wis. 2d at 229. The *Craker* court concluded that moral scruples and family pressure are " 'self-imposed coercive elements' [which] do not vitiate the voluntary nature of the defendant's guilty plea." *Id.* (citing *Drake v. State,* 45 Wis. 2d 226, 233, 172 N.W.2d 664 (1969)).

¶ 64. Lackershire has raised no plausible argument that her plea was legally coerced. She does not contend that she asked the circuit court to postpone her trial date and was refused. Although she asserts that the district attorney told her that postponement "was not an option," she does not claim that the district attorney implied that the plea agreement was contingent upon Lackershire not seeking such a postponement. Thus, neither the court nor the prosecutor denied her a fair or reasonable alternative to choose from such that her choice was coerced.

¶ 65. Rather, we determine that because the decision whether to seek a postponement was within her control, the choice between pleading guilty and going to trial on the scheduled date was self-imposed. Accordingly, we conclude that her concern about the stress of a trial does not vitiate the voluntary nature of her plea.

## VI

¶ 66. In conclusion, we determine that the court of appeals erred in concluding that the dismissed charges were read-in offenses. Because the record does not reflect that the dismissed charges were treated as

read-ins, a read-in analysis is not warranted. Thus, whether Lackershire understood the nature of read-ins is not at issue.

¶ 67. We also determine that Lackershire's plea colloquy was inadequate. The factual basis relied upon by the court in accepting Lackershire's plea raised a substantial question as to whether she had committed sexual assault or had herself been the victim of rape. This necessitated that the circuit court make further inquiry to establish a sufficient factual basis to support Lackershire's plea under Wis. Stat. § 971.08(1)(b).

¶ 68. Finally, we determine that her fear about the effect of a trial on her pregnancy did not render her plea involuntary. Accordingly, we reverse the court of appeals and remand to the circuit court for a hearing on whether Lackershire's plea is knowing and intelligent.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

¶ 69. LOUIS B. BUTLER, JR., J. (*concurring*). With the exception of footnote 4, I join the majority opinion. I write separately because I would address Monika Lackershire's argument that the plea colloquy inadequately addressed the elements of the offense of second degree sexual assault of a child, pursuant to Wis. Stat. § 948.02(2).

¶ 70. Section 948.02(2) provides in relevant part: "Whoever has . . . sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony." Wisconsin Stat. § 948.01(6) defines "sexual intercourse" as the "vulvar penetration as well as cunnilingus, fellatio or anal intercourse between persons or any other intrusion, however slight, of any part of a person's body or of any object into the genital

452

or anal opening either by the defendant or upon the defendant's instruction." Lackershire argues that the phrase "by the defendant or upon the defendant's instruction" is an element of the offense to which Lackershire pled. The State disagrees, asserting that the phrase is not a separate element of the offense charged here, but an element of a different type of sexual assault involving a victim's insertion of an object into his or her own genital or anal opening at the defendant's instruction. The State further argues that Lackershire's "non-consent" is a defensive matter to be raised by her.

¶ 71. Because the majority concludes that the guilty plea colloquy was inadequate as a result of the circuit court's failure to make sufficient inquiry to satisfy the factual basis requirement, the majority has declined to reach the issue concerning the elements of the offense of second degree sexual assault of a child. Majority op., ¶ 5 n.4. Because the issue is squarely before us and is likely to impact a significant number of future cases, I would address it to provide guidance to trial and appellate courts. Such a determination could also ultimately impact the language of the Wisconsin Jury Instructions with respect to sexual assault cases. *See, e.g.,* Wis JI—Criminal 2101B and 2104.

¶ 72. For the forgoing reasons, I respectfully concur.

¶ 73. JON P. WILCOX, J. (*dissenting*). Lackershire moved to withdraw her plea on three grounds: (1) she did not understand the elements of the crime to which she pleaded guilty, (2) she was not made aware of the read-in charges, and (3) her pregnancy caused her to act involuntarily in entering her guilty plea.

453

¶ 74. When deciding Lackershire's motion, the judge addressed the grounds raised in it. For focusing on the motion made by the defendant, and failing to focus on the factual basis requirement that Lackershire herself did not even raise, the judge erred.

¶ 75. You did not misread that: for focusing on the motion made by the defendant, the judge erred in this case. The majority arrives at its odd result by imposing a new obligation on trial judges during the plea procedure. Now, regardless of the motion made by a defendant seeking to withdraw his or her plea, the judge is responsible for identifying any potential grounds for withdrawal (i.e., substantial questions that warrant further inquiry). This new obligation undercuts the burdens already in place during the well-established plea withdrawal procedure.

¶ 76. According to the majority, it is not just the judge that considered Lackershire's motion to withdraw that erred: the judge that conducted the plea colloquy failed to satisfy the factual basis requirement. Majority op., ¶ 38. On this more substantive issue, I also disagree with the majority. Accordingly, I respectfully dissent.

I

¶ 77. The majority decides that Lackershire had an inadequate plea colloquy because the circuit court judge taking her plea did not satisfy the factual basis requirement. Before getting to the substance of that decision, it is worth articulating the effect of the majority even getting to the factual basis requirement in the first place.

454

## A. Plea withdrawal procedure

¶ 78. The procedure for determining whether plea withdrawal is warranted is well established. *State v. Brown,* 2006 WI 100, ¶ 39–41, 293 Wis. 2d 594, 716 N.W.2d 906; *State v. Bangert,* 131 Wis. 2d 246, 274–75, 389 N.W.2d 12 (1986). It begins with a motion by the defendant. *Brown,* 293 Wis. 2d 594, ¶ 39; *Bangert,* 131 Wis. 2d at 274. The legislature has defined "motion" in the context of a criminal proceeding:

(1) "Motion" means an application for an order.

(2) Unless otherwise provided or ordered by the court, all motions shall meet the following criteria:

(a) Be in writing.

(b) Contain a caption setting forth the name of the court, the venue, the title of the action, the file number, a denomination of the party seeking the order or relief and a brief description of the type of order or relief sought.

(c) State with particularity the grounds for the motion and the order or relief sought.

Wis. Stat. § 971.30. A motion to withdraw a plea must specifically do the following:

(1) make a prima facie showing of a violation of Wis. Stat. § 971.08(1)[1] or other court-mandated

---

[1] Wisconsin Stat. § 971.08(1) provides the following:

Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

duties[2] by pointing to passages or gaps in the plea hearing transcript; and (2) allege that the defendant did not know or understand the information that should have been provided at the plea hearing.

*Brown,* 293 Wis. 2d 594, ¶ 39.

(c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."

Understanding of the nature of the charge and the potential punishment, as addressed in § 971.08(1)(a), has been interpreted as requiring " 'an awareness of the essential elements of the crime.' " *State v. Lange,* 2003 WI App 2, ¶ 17, 259 Wis. 2d 774, 656 N.W.2d 480 (quoting *State v. Brandt,* 226 Wis. 2d 610, 619, 594 N.W.2d 759 (1999)).

Distinct from § 971.08(1)(a), § 971.08(1)(b) requires that the circuit court be satisfied that the defendant in fact committed the crime charged. In *State v. Thomas,* 2000 WI 13, ¶ 14, 232 Wis. 2d 714, 605 N.W.2d 836, we referred to this requirement as the "factual basis" requirement. To satisfy the factual basis requirement, a judge must "determine to the court's satisfaction that the facts, if proved, 'constitute the offense charged and whether the defendant's conduct does not amount to a defense.' " *Morones v. State,* 61 Wis. 2d 544, 552, 213 N.W.2d 31 (1973) (quoting *Edwards v. State,* 51 Wis. 2d 231, 236, 186 N.W.2d 193 (1971)).

[2] In *State v. Brown,* 2006 WI 100, 293 Wis. 2d 594, 716 N.W.2d 906, the court provided the following list of duties a circuit court judge has during a plea hearing:

(1) Determine the extent of the defendant's education and general comprehension so as to assess the defendant's capacity to understand the issues at the hearing;

(2) Ascertain whether any promises, agreements, or threats were made in connection with the defendant's anticipated plea, his appearance at the hearing, or any decision to forgo an attorney;

¶ 79. Once the defendant has filed a motion to withdraw his or her plea, the circuit court reviews it. *Id.*, ¶ 40. If the motion establishes a prima facie violation and makes the requisite allegations, the defendant has met his or her burden. *Id.* The circuit court then holds an evidentiary hearing, which allows the state "to show by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary despite the identified inadequacy of the plea collo-

(3) Alert the defendant to the possibility that an attorney may discover defenses or mitigating circumstances that would not be apparent to a layman such as the defendant;

(4) Ensure the defendant understands that if he is indigent and cannot afford an attorney, an attorney will be provided at no expense to him;

(5) Establish the defendant's understanding of the nature of the crime with which he is charged and the range of punishments to which he is subjecting himself by entering a plea;

(6) Ascertain personally whether a factual basis exists to support the plea;

(7) Inform the defendant of the constitutional rights he waives by entering a plea and verify that the defendant understands he is giving up these rights;

(8) Establish personally that the defendant understands that the court is not bound by the terms of any plea agreement, including recommendations from the district attorney, in every case where there has been a plea agreement;

(9) Notify the defendant of the direct consequences of his plea; and

(10) Advise the defendant that "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense [or offenses] with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law," as provided in Wis. Stat. § 971.08(1)(c).

*Id.,* ¶ 35 (footnotes omitted).

457

quy." *Id.* If the state meets its burden, the evidentiary hearing ends and the defendant may not withdraw his or her plea as a matter of right. *Id.,* ¶ 41. If the state fails to meet its burden, the defendant may withdraw his or her plea as a matter of right. *Id.*

B.   Procedural posture of this case

¶ 80.   In this case, Reserve Judge Radcliffe presided over Lackershire's plea hearing, which occurred. March 16, 2004. At the plea hearing, Lackershire pleaded guilty to one count of second-degree sexual assault of a child.

¶ 81.   Five months after Lackershire's plea hearing, Judge Morey presided over Lackershire's sentencing hearing. According to the sentencing hearing transcript, Lackershire was sentenced to "nine years and zero months. That is three years and zero months confinement in prison, and six years and zero months is the extended supervision time."

¶ 82.   Over six months after Lackershire's sentencing hearing she filed a motion to withdraw her guilty plea. Lackershire's motion to withdraw her plea listed three separate grounds:

> She stated that there had not been a specific recitation of the elements of the crime to which she had pleaded. She also posited, based on a review of the [Pre-Sentence Investigation], that the dismissed charges had been treated as read-ins at sentencing, and that she had not understood that they would be treated that way. Further, she argued that her fear of harm to her pregnancy caused by the stress of trial served to coerce her into pleading guilty.

Majority op., ¶ 17. (Note that the majority's own summary of the grounds raised in Lackershire's motion does not include a reference to the factual basis requirement.)

¶ 83. During the motion hearing, Lackershire's attorney focused on the grounds raised in the motion. Judge Morey asked, "do you wish to supplement your brief with anything?" Lackershire's attorney responded, "Yes. Briefly, Judge. I set out most of the authorities in the actual motion." The attorney then went on to describe the grounds on which Lackershire's motion was based. During the motion hearing, the attorney made no reference to the factual basis requirement; nor did the district attorney or Judge Morey make any reference to it.

¶ 84. At the outset of oral argument before this court, Lackershire's attorney framed the issues of this case as follows: "There are three sets of issues concerning her plea that are being raised today. There are issues related to the existence of read-in charges, issues related to the elements of the crime to which she pled and the issues related to her pregnancy." The State recapped the issues being addressed in a similar way: "The Defendant seeks to withdraw her guilty plea on three grounds: the read-in charges, the elements, and her pregnancy." Neither attorney mentioned any issue related to the factual basis requirement.

¶ 85. The way that the parties framed the issues tracks the issues presented in Lackershire's petition for review. These were as follows:

1. Should the longstanding rule that read-in offenses that are part of a plea agreement must be set forth on the record at the time of the plea-taking procedure be reversed?

2. If read-in offenses are made part of a plea agreement, must the defendant have actual knowledge and understanding of those offenses and the consequences of the read-in procedure?

459

3.    When a defendant has moved to withdraw a plea, and testified as to the confusion and/or misunderstanding about the elements or nature of the charge, must the state produce affirmative evidence in order to prevail?

4.    Where the uncontroverted evidence shows that a pregnant defendant entered a plea with the understanding that she could not medically endure a trial without risking her health or the health of the unborn baby and that she believed she could not get an adjournment of the trial date, has the defendant shown that her plea was not voluntary, thereby entitling her to withdraw the plea?

Again, there was no mention of the factual basis requirement in Lackershire's petition for review. Given the procedural posture of the case, it is understandable that the factual basis requirement was not mentioned during oral argument by either party or any of the justices.

¶ 86.   It was not until a supplemental brief, after this court heard oral argument on the questions presented, that Lackershire even mentioned the factual basis requirement. In an order seeking additional briefing in the case, we posed three questions. The second question asked the following:

> If the phrase "either by the defendant or upon the defendant's instruction" provides an affirmative defense for the sexual assault crime to which Lackershire pleaded guilty, does the failure, during the plea colloquy, to discuss the claim by the defendant that she was raped, since that issue was raised in the probable cause portion of the criminal complaint and in the preliminary hearing transcript presented to support her plea, mean that her plea was not entered knowingly, voluntarily, and intelligently?

In her supplemental brief responding to the question, she stated the following:

> Lackershire submits that it is almost irrelevant under the facts of this case whether the issue is viewed as a defective colloquy on the elements, or as the failure to find an adequate factual basis, or even under the manifest injustice test requiring her to show a lack of knowledge or understanding of a material element. Under any view, at the time of the plea Lackershire was not advised and did not understand that she was not guilty of any crime if, indeed, she was the victim of the boy's assault, as she claimed.

In essence, Lackershire invited the court to decide her case based on the grounds of the elements being misunderstood, the factual basis requirement not being satisfied, or the manifest injustice test. The grounds the court chose was "almost irrelevant."

¶ 87. There is a problem with Lackershire's invitation: she never moved the circuit court to withdraw her plea because of a failure to satisfy the factual basis requirement. According to the well-established procedure for plea withdrawal, Lackershire would have had to include her claim that Judge Radcliffe failed to satisfy the factual basis requirement in her motion to the circuit court. Judge Morey then could have assessed whether she had made a prima facie showing and the requisite allegations to satisfy her burden. However, Lackershire never made such a motion. The issue was not reviewed by the circuit court and should not be reviewed by any appellate courts.

C. The new plea withdrawal procedure

¶ 88. The majority accepted Lackershire's invitation to decide the case based on the factual basis requirement. Majority op., ¶ 5 n.4.

461

¶ 89. The majority not only accepted Lackershire's invitation to decide the case on the factual basis requirement, it makes it seem as though the factual basis requirement has been one of Lackershire's primary arguments all along. For example, in explaining Lackershire's arguments, the majority states the following: "[S]he argues that the circuit court failed to satisfy the 'factual basis' requirement under Wis. Stat. § 971.08(1)(b)." Majority op., ¶ 2; *see also id.* ¶ 5 n.4 ("In addition to [Lackershire's] factual basis argument . . . "), *id.,* ¶ 26 ("Lackershire asserts that her plea colloquy was defective . . . in two ways. . . . Second, the circuit court failed to satisfy the 'factual basis' requirement . . . "), and *id.,* ¶ 30 ("In her second argument, Lackershire advances that the circuit court did not satisfy the factual basis requirement . . . ").

¶ 90. The record in this case tells a different story: Lackershire never alleged that the plea-taking court failed to satisfy the factual basis requirement. Lackershire failed to present any argument related to the factual basis requirement in her motion to the circuit court. Having failed to raise it in her motion to the circuit court, not surprisingly she did not make any such argument to the court of appeals. Similarly, she did not petition this court to review an issue about the factual basis requirement. Lackershire sensibly did not make an argument related to the factual basis requirement in her primary briefs to this court, given that we did not grant a petition to review for such an issue. Only in a supplemental brief answering a question about whether rape constitutes an affirmative defense to the crime to which she pleaded guilty did Lackershire stumble upon the factual basis requirement.

¶ 91. In the face of the well-established plea withdrawal procedure that requires that the defendant

make a motion with a prima facie showing of a violation of § 971.08(1) or other court mandated duty, the majority decides that a prima facie showing may spring from the record itself. Majority op., ¶ 38. It stated that:

> there is a substantial question as to whether these facts, which form the basis of Lackershire's plea, constitute the offense charged. That substantial question obligated the circuit court to make additional inquiry, pursuant to § 971.08(1)(b), to ensure that Lackershire in fact committed the crime charged. Resolving that question is vital to fulfill the purpose of the factual basis requirement.

*Id.*, ¶¶ 41–42. No need for a motion that raises the "substantial question." The presence of a "substantial question" somewhere in the record seems to be enough to obligate a judge reviewing a plea colloquy to address it.[3] (Such a new procedure makes one wonder if a new claim is around the corner: ineffective assistance of judge.)

---

[3] This is not an isolated comment by the majority. It also stated the following a few paragraphs later:

> Here, the preliminary hearing transcript and the complaint, which formed the factual basis upon which the circuit court relied, should have raised a red flag prompting further inquiry. Such inquiry is required in order to protect Lackershire from pleading guilty without realizing that the conduct she admitted does not constitute the offense charged. Because a substantial question exists whether this is a sexual assault of or by Lackershire, and because the colloquy did not establish that Lackershire realized that if the underlying conduct was an assault upon her, she could not be guilty of the offense charged, the circuit court failed to satisfy the factual basis requirement.

Majority op., ¶ 46. Again, *no need for a motion by the defendant that raises the "substantial question."* Circuit court judges are not only obligated to satisfy the requirements of a valid plea, but when reviewing a plea colloquy they are now also responsible for identifying any defects.

¶ 92. Previously, the plea withdrawal procedure empowered defendants to make a motion alleging how a plea-taking court failed to satisfy a plea colloquy duty. That motion permitted the defendants to have the court deal with their allegation directly. Now, judges considering defendants' motions have the added obligation to be on the lookout for substantial questions and red flags in the record of the plea colloquy. That role used to be fulfilled by the defendants and their counsel.

¶ 93. It seems the majority fails to completely grasp the change it is making. Majority op., ¶ 42 n.11. While noting that bringing to light the new obligation on judges is a "disservice," "conjecture" and "hyperbole," the majority states the following: "The requirement that judges establish a factual basis is statutory, Wis. Stat. § 971.08(1)(b), and does not come from this opinion." *Id.* This misses the point.

¶ 94. A judge having an obligation to satisfy the statutory and other court mandated duties when taking a plea is not new. However, the new obligation I am pointing out has nothing to do with the taking of a plea.

¶ 95. The new obligation affects judges considering a defendant's plea withdrawal motion. Before, such a judge would focus on the allegations made in the defendant's motion. Now, such a judge will have to be on the lookout for substantial questions and red flags in the record, even if the defendant did not raise them.

¶ 96. Nonetheless, the majority of this court has decided that spotting all the potential grounds for withdrawal in the record is an acceptable obligation. We are, after all, discussing protecting defendants' constitutional rights. Reading the majority opinion, one may even be left with the impression that this record raised such an obvious red flag and substantial question that

464

the new obligation can hardly be labeled an obligation. *See* majority op., ¶¶ 4, 38, 41, 46. That would be a mistake.

¶ 97.  Consider the actions of those involved with this case that did not benefit from hindsight. First, Lackershire's own attorney did not spot the red flag. He even received the two extensions he requested to file Lackershire's motion to withdraw. The extra time to review the record apparently did not help him identify the seemingly substantial issue related to the factual basis requirement.

¶ 98.  During  oral  argument  to  this  court, Lackershire's attorney did mention a red flag:

> Certainly I just think this is less than a routine case and there are enough red flags here on the element issue that I think in this case the plea-taking itself didn't go far enough to satisfy the trial judge or to inform this particular defendant as we find her with her various difficulties, also which were noted in the record.

The red flag mentioned related to Lackershire's understanding of the elements, not the judge's satisfaction of the factual basis requirement. A red flag, but apparently the wrong one for the majority. Majority op., ¶ 5 n.4.

¶ 99.  Only after this court requested supplemental briefs on an unrelated issue, did Lackershire's attorney mention the factual basis requirement. If the factual  basis  requirement  were  such  an  obvious grounds for further inquiry, why did Lackershire's own attorney not stumble upon it until after oral argument before this court?

¶ 100.  Lackershire's attorney was not the only one who failed to spot the red flag that the factual basis

requirement purportedly presented. A panel of three court of appeals judges did not identify the factual basis requirement as one that needed to be addressed.[4] Additionally, none of the seven justices on this court noted the factual basis requirement during the oral argument. The court even issued an order after oral argument that requested supplemental briefing on three questions, none of which mentioned the factual basis requirement.

¶ 101.  If the defendant, the circuit court judge, three court of appeals judges, and seven supreme court justices failed to spot the substantial question in this case, it seems the majority is imposing a more unrealistic obligation on circuit court judges than it appreciates. The unrealistic obligation also unnecessarily undercuts the burdens already in place for the plea withdrawal procedure.

II

¶ 102.  The court bases its decision on the existence of enough evidence in the record to make a prima facie showing that the plea was invalid because the judge failed to satisfy the factual basis requirement. The fact that Lackershire did nothing to make that prima facie showing and satisfy her burden in the plea withdrawal procedure aside, the record reflects that Judge Radcliffe did satisfy the factual basis requirement.

¶ 103.  To satisfy the factual basis obligation, a judge must "determine to the court's satisfaction that

---

[4] Of course, the court of appeals focused on the questions presented on appeal. *See State v. Lackershire,* 2005 WI App 265, 288 Wis. 2d 609, 707 N.W.2d 891. But, apparently, that will no longer be sufficient when the court of appeals reviews a circuit court's denial of a motion to withdraw a plea.

the facts, if proved, 'constitute the offense charged and whether the defendant's conduct does not amount to a defense.' " *Morones v. State,* 61 Wis. 2d 544, 552, 213 N.W.2d 31 (1973) (quoting *Edwards v. State,* 51 Wis. 2d 231, 236, 186 N.W.2d 193 (1971)). In this case, the judge did both: (1) the facts that Lackershire admitted to, if proved, constitute second-degree sexual assault of a child and (2) Lackershire's conduct did not amount to a rape defense. Accordingly, Judge Radcliffe satisfied the factual basis requirement.

A.   Facts that constitute the offense charged

¶ 104.   During the plea colloquy in this case, the following exchange occurred:

THE COURT:   Can you tell me what charge – what the charge is that you're going to enter a plea to?

LACKERSHIRE:   I believe it's the sexual assault of a child under the age of sixteen.

THE COURT:   The Information in this case . . . alleges that, in August of 2003—that would have been last August—in this county, you had sexual intercourse with a child under the age of sixteen years.

Do you understand that?

LACKERSHIRE:   Yes.

THE COURT:   Is that true?

LACKERSHIRE:   Yes.

THE COURT:   Do you understand it's alleged that this is a violation of Section 948.02 of the Wisconsin Statutes?

LACKERSHIRE:   Yes.

467

Lackershire admitted that she had sexual intercourse with a child under the age of sixteen. Second-degree sexual assault of a child has only two elements: "that the accused had sexual contact or intercourse with the victim, and that the victim was under the age of sixteen." *State v. Jadowski*, 2004 WI 68, ¶ 12, 272 Wis. 2d 418, 680 N.W.2d 810. Lackershire's admission establishes facts that, if proved, would constitute the offense charged.

¶ 105. After questioning Lackershire, Judge Radcliffe also had the following exchange with Lackershire's attorney:

THE COURT: Now, you have heard the questions that I have asked of your client this afternoon.

Based on your discussions with her in this case, do you believe that she's answered those questions truthfully and accurately?

ATTORNEY: I do, Your Honor.

THE COURT: Are you satisfied that she understands the nature of the charge?

ATTORNEY: I am, Your Honor.

THE COURT: And you indicated that you have explained the elements of the offense to her?

ATTORNEY: I have, Your Honor.

THE COURT: You have explained how the evidence that would be available to the State at a trial in this matter relates to each of those elements?

ATTORNEY: I have, Your Honor.

Later in the exchange, the following was stated:

> THE COURT: Do you stipulate to a factual basis for the first count based on the criminal complaint and the testimony taken at the preliminary hearing?
>
> ATTORNEY: I do, Your Honor.
>
> THE COURT: Your client has indicated that she thought that that did provide sufficient reason for that charge.
>
> Are you satisfied that it does, in fact, do so?
>
> ATTORNEY: I agree, Your Honor.

Not only did Lackershire's admission establish facts that, if proved, would constitute the offense charged, but her attorney and advocate gave his assessment that that is what she had done.

## B. Conduct that does not amount to a defense

¶ 106. A significant difference exists between a defendant admitting to conduct that amounts to a defense and a defendant having a defense. While it is the court's responsibility to ensure that the defendant is not admitting to conduct that amounts to a defense, it is the responsibility of the defendant's attorney to discuss defenses with his or her client. *See State v. Froehlich,* 49 Wis. 2d 551, 559, 182 N.W.2d 267 (1971). This case presents a situation where Lackershire may have had a defense, not one where she admitted to conduct that amounts to a defense.

¶ 107. Lackershire may have had a defense, versus having admitted to conduct that constituted a defense, because admitting to having "sexual inter-

course" pursuant to § 948.02 and alleging rape relate to different underlying conduct, at least according to § 948.01(6). Having "sexual intercourse" requires that the activity be done "either by the defendant or upon the defendant's instruction." Wis. Stat. § 948.01(6). The definition of "sexual intercourse" provided in § 948.01(6) "establishes that, in order for sexual intercourse, as defined, to occur, the defendant has to either affirmatively perform one of the actions on the victim, or instruct or direct the victim to perform one of them on him- or herself." *State v. Olson,* 2000 WI App 158, ¶ 10, 238 Wis. 2d 74, 616 N.W.2d 144. When Lackershire admitted to having sexual intercourse, the judge followed up with her by confirming that she was acknowledging that she violated § 948.02. Wisconsin Stat. § 948.02 makes sexual intercourse, as defined by § 948.01(6), a crime.

¶ 108.   Unlike admitting to having sexual intercourse in violation of § 948.02, alleging rape entails a person claiming he or she was the victim of a sexual assault. A person that is a victim of sexual assault does not have "sexual intercourse" because they neither affirmatively perform a necessary act on the other person, or instruct or direct the other person to perform a necessary act on them. Accordingly, Lackershire's admission that she had sexual intercourse (i.e., affirmatively acted or directed action) means that her admitted conduct did not amount to a rape defense. The court did not err in fulfilling its obligation to ensure that the defendant's conduct does not amount to a defense.

### III

¶ 109.   The majority reached a decision on the factual basis requirement with which I cannot agree.

More troubling though, because of the impact it will have on other plea withdrawal cases, is the ill-advised new obligation the majority has placed on circuit court judges. *See e.g., State v. Howell,* 2007 WI 75, 301 Wis. 2d 350, 734 N.W.2d 48.

¶ 110.  For the reasons stated, I respectfully dissent.

¶ 111.  I am authorized to state that Justices DAVID T. PROSSER and PATIENCE DRAKE ROGGENSACK join this opinion.