**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 2, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1591-CR**

Cir. Ct. No. **2015CF3225**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

ASMAR M. YOUNG,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed.*

Before Kessler, Brennan and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Asmar M. Young entered pleas to four crimes committed over five days. Young filed a postconviction motion to withdraw his pleas, arguing that: (1) his pleas were not knowingly and intelligently entered because the circuit court failed to establish a factual basis for one of the convictions; (2) his pleas were not knowingly, voluntarily, and intelligently entered because (a) he was not advised of and did not understand the elements of the crimes and the maximum penalties, and (b) his original trial counsel provided ineffective assistance by advising Young to enter the pleas, and by not adequately explaining the elements of the crimes and the maximum penalties; and (3) his replacement counsel provided ineffective assistance by failing to raise these issues in his presentencing plea withdrawal motion. The court denied Young's postconviction motion without a hearing. Young makes the same arguments on appeal. As we explain, we reject Young's arguments and affirm.

## BACKGROUND

¶2 The criminal complaint described the following five crimes:

- On the afternoon of July 8, 2015, two men, Z.D. and D.S., were sitting in the front seat of a car when a male entered the car, pointed a pistol at them, and took the keys to the car, cash, and a cell phone belonging to one of the men. A second male took a wristwatch from one of the men. A third male accompanied the other two. The three males left in a red four-door car with tinted windows and a temporary license plate.

- At about midnight on July 9, 2015, Z.D. and D.S., who had been robbed on July 8, saw the same red four-door car with a temporary

2

license plate, followed the car, and were shot at by the same males who had robbed them.

- At about 4:00 a.m. on July 9, 2015, L.A. (misidentified in the criminal complaint as L.J.) died of a single gunshot wound sustained as he drove away from two gunmen who had emerged from a red four-door car with tinted windows and who had fired at him at close range.

- On July 11, 2015, a male armed with a handgun robbed D.K. of his car keys and stole his car from an apartment complex parking lot. A red car with a temporary license plate was seen in the complex at the time of the theft and was located near the stolen car when the stolen car was later recovered.

- On July 13, 2015, a video recording showed an altercation between Young and J.T. as Young left a gas station, and the video showed Young then shooting with a handgun at a car into which J.T. had withdrawn. Young was wearing a T-shirt with the logo "LRG" on the front and was accompanied by two minor females.

¶3 According to the criminal complaint, the two men robbed in their car on July 8 identified Young as one of the males who robbed them at gunpoint. Also according to the criminal complaint, D.K. told police that Young is his cousin and that, on the day D.K.'s car was stolen, Young came to his apartment, told D.K. that D.K's car window had been smashed, and stayed in the apartment while D.K. went to check on his car. At that point D.K.'s car was stolen at gunpoint as described above, and Young left when D.K. returned to the apartment.

¶4     According to the criminal complaint, on July 16, 2015, law enforcement officers located Young inside a residence; he was wearing a T-shirt with the logo "LRG" on the front; two minor females were present; and a 9 millimeter semi-automatic pistol was located in a couch.  Forensic testing showed that the casing from that pistol matched the casings recovered from the scene of the shooting shortly after midnight on July 9, the scene of the shooting of L.A. at 4:00 a.m. on July 9, and the scene of the shooting of J.T. on July 13.

¶5     The State initially charged Young with two counts of armed robbery as a party to a crime for the July 8 robbery, one count of armed robbery as a party to a crime for the July 11 stealing of the car, and first-degree recklessly endangering safety with use of a dangerous weapon and possession of a firearm by a felon for the July 13 shooting.  The State subsequently filed several amended informations, ultimately adding one count of first-degree reckless homicide as a party to a crime with use of a dangerous weapon for the July 9 shooting death of L.A. and three additional counts of possession of a firearm by a felon.

¶6     On the day the case was scheduled for trial, the parties told the circuit court that Young would enter pleas, and the court scheduled a plea hearing for two days later.  At the plea hearing, Young pleaded no contest to one count of first-degree reckless homicide and guilty to one count of armed robbery, one count of first-degree recklessly endangering safety, and one count of possession of a firearm by a felon.

¶7     Subsequently, Young told the circuit court he wanted to withdraw his pleas because his trial counsel pressured him into entering the pleas.  The court granted counsel's motion to withdraw, and Young's replacement counsel filed a motion to withdraw Young's pleas.  The court held a hearing at which Young and

trial counsel testified. At the conclusion of the hearing, the court denied Young's plea withdrawal motion.

¶8 After a competency examination determined that Young was competent to proceed and was malingering, the case proceeded to sentencing.

¶9 Postconviction, Young's competence was again evaluated and he was found competent to proceed. Young then filed a motion to withdraw his pleas, and the circuit court denied the motion without a hearing. Young appeals.

¶10 We will relate additional facts, including details of the plea hearing and the hearing on Young's presentencing plea withdrawal motion, in the discussion that follows.

## DISCUSSION

¶11 Young argues that he is entitled to withdraw his plea to the homicide count as not knowingly and intelligently entered because the circuit court failed to establish a factual basis for his plea to that count. Young also argues that he is entitled to an evidentiary hearing on his argument that his pleas were not knowingly, voluntarily, and intelligently entered because: (1) he was not advised of and did not understand the elements of the crimes and the maximum penalties; (2) his trial counsel provided ineffective assistance by advising Young to enter the pleas and by not adequately explaining the elements of the crimes and the maximum penalties; and (3) replacement counsel provided ineffective assistance by failing to raise these issues in his presentencing plea withdrawal motion. We address and reject each argument in turn.

*I. Failure to Establish Factual Basis for Homicide Plea[1]*

¶12    When a defendant moves to withdraw his or her plea after sentencing, "the defendant carries the heavy burden of establishing, by clear and convincing evidence, that the [circuit court] should permit the defendant to withdraw the plea to correct a manifest injustice." *State v. Thomas*, 2000 WI 13, ¶16, 232 Wis. 2d 714, 605 N.W.2d 836 (citation and internal quotation marks omitted).  "[I]f a circuit court fails to establish a factual basis" for a plea, as required by WIS. STAT. § 971.08(1)(b) (2017-18),[2] "manifest injustice has occurred." *Thomas*, 232 Wis. 2d 714, ¶17.  The establishment of a factual basis is necessary for a plea to be knowing and intelligent.  *See State v. Lackershire*, 2007 WI 74, ¶¶34-35, 301 Wis. 2d 418, 734 N.W.2d 23 (stating that "establishing a factual basis under § 971.08(1)(b) is necessary for a valid plea" and "helps ensure that the defendant's plea is knowing and intelligent" (citation omitted)).  Pertinent here, establishing the factual basis for a plea means establishing "that a crime has been committed and it is probable that the defendant committed it."  *State v. Payette*, 2008 WI App 106, ¶7, 313 Wis. 2d 39, 756 N.W.2d 423.

---

[1] This challenge implicates the circuit court's duty in the plea colloquy to establish a factual basis for a plea.  Challenges that a court has not fulfilled its plea colloquy duties are typically addressed under the analysis set forth in *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).  However, our supreme court has acknowledged that "applying the *Bangert* procedure for failure to satisfy the factual basis requirement is an awkward fit." *State v. Lackershire*, 2007 WI 74, ¶48, 301 Wis. 2d 418, 734 N.W.2d 23.  Accordingly, we address Young's factual-basis challenge in this section separately from the *Bangert* analysis that we apply to his other plea colloquy defect challenges in the section that follows.

[2] WISCONSIN STAT. § 971.08(1)(b) provides that before a court accepts a plea of guilty or no contest, it shall "[m]ake such inquiry as satisfies it that the defendant in fact committed the crime charged."  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶13    Here, the circuit court relied on the criminal complaint to establish the factual basis for the plea.  "Whether the complaint alleges sufficient facts to establish probable cause that [the defendant] committed the crimes charged is a question of law which we review *de novo*."  *Id.*, ¶14.[3]

¶14    Young does not argue that the criminal complaint contains insufficient facts to establish that the crime of first-degree reckless homicide occurred.  Rather, Young argues that there is no factual basis for the homicide plea because the criminal complaint does not contain facts connecting Young to the homicide described in the criminal complaint.  That is, Young argues that the

---

[3] As the parties note, in *State v. Thomas*, 2000 WI 13, 232 Wis. 2d 714, 605 N.W.2d 836, the supreme court, in reviewing a factual-basis claim, stated, "A court's decision to allow withdrawal of a guilty plea is a matter of discretion, subject to the erroneous exercise of discretion standard on review."  *Id.*, ¶13.  However, the court in that case appeared to resolve the factual-basis claim as a matter of law based on its own independent review of the record:

> We conclude … that Thomas has not demonstrated the "manifest injustice" required to withdraw his guilty plea.  A factual basis supporting the plea was established, because when the record is viewed under the totality of the circumstances, it is evident that Thomas assented to the facts as his counsel stipulated to them.  Since a proper factual basis was established, the guilty plea does not result in manifest injustice.

*Id.*, ¶27.  Independent review is consistent with the supreme court's more recent statement in *State v. Sulla*, 2016 WI 46, ¶23, 369 Wis. 2d 225, 880 N.W.2d 659, that:

> When examining a defendant's postconviction motion for plea withdrawal, we employ the following standard of review.  "[W]hether a defendant's motion to withdraw a guilty plea 'on its face alleges facts which would entitle the defendant to relief' and whether the record conclusively demonstrates that the defendant is entitled to no relief" are questions of law that we review *de novo*.

(citation omitted) (italics added).  Accordingly, we proceed with *de novo* review here.

criminal complaint does not establish that "it is probable that the defendant committed" the homicide. *See id.*, ¶7. The record refutes Young's argument.

¶15    The criminal complaint here states the following. On the afternoon of July 8, 2015, Young used a gun to rob Z.D. and D.S. and then left in a red four-door car with tinted windows and a temporary license plate. Later, around midnight, Young fired gunshots at Z.D. and D.S. from the same red four-door car with a temporary license plate. Still later, at 4:00 a.m. on July 9, 2015, two men emerged from a red four-door car with tinted windows and fatally shot L.A. Then, on July 13, 2015, Young fired a gun at J.T. and injured him. The same gun was used in each of the three shootings, and that gun was found on July 16, 2015, in the residence where Young was located.

¶16    These facts suffice to establish that it was *probably* Young who used the same gun to shoot at Z.D. and D.S. around midnight on July 9, to fatally shoot L.A. around 4:00 a.m. on July 9, and to shoot J.T. on July 13. *See id.* (a sufficient factual basis requires a showing that the defendant probably committed the crime, not that the defendant's guilt is established beyond a reasonable doubt).

¶17    On appeal, Young argues that the criminal complaint could not provide a factual basis for the plea because he was not charged with the homicide in the criminal complaint, but was rather charged in the amended information. However, Young cites no legal authority in support of his argument, and we need not consider it further. *See **Industrial Risk Insurers v. American Eng'g Testing, Inc.**, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("Arguments unsupported by legal authority will not be considered, and we will not abandon our neutrality to develop arguments." (internal citation omitted)). Moreover, the question is not whether the defendant was charged with the crime in the criminal

complaint, but whether the facts in the complaint constitute the crime with which the defendant was ultimately charged and to which the defendant pleaded. *See Lackershire*, 301 Wis. 2d 418, ¶48 ("[f]actual basis cases typically involve the question of whether undisputed facts actually constitute the crime charged" at the plea hearing).

¶18 In sum, Young fails to show the absence of a factual basis for his no-contest plea to first-degree reckless homicide.

*II. Defective Plea Colloquy and Ineffective Assistance of Trial Counsel*

¶19 As stated, "When a defendant seeks to withdraw a guilty plea after sentencing, he [or she] must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" *State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906 (quoted source omitted). "One way for a defendant to meet this burden is to show that he [or she] did not knowingly, intelligently, and voluntarily enter the plea." *Id.* (citations omitted).

¶20 A defendant may show that the plea was not knowingly, intelligently, and voluntarily entered under one of two lines of cases: (1) the *Bangert* line of cases, *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), when the plea colloquy is defective; or (2) the *Nelson/Bentley* line of cases, *Nelson v. State*, 54 Wis. 2d 489, 195 N.W.2d 629 (1972), and *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996), when "some factor extrinsic to the plea colloquy, like ineffective assistance of counsel or coercion, renders a plea infirm." *State v. Howell*, 2007 WI 75, ¶¶2, 74, 301 Wis. 2d 350, 734 N.W.2d 48.

¶21 Young argues that the circuit court erred in failing to hold an evidentiary hearing on his postconviction motion to withdraw his pleas based on (1) the circuit court's failure to inform him of the elements of and maximum penalties for the crimes, and (2) ineffective assistance of counsel. To warrant an evidentiary hearing, Young must satisfy the requirements of ***Bangert*** or ***Nelson/Bentley***. *See **id.***, ¶24. We analyze Young's first challenge to the validity of his pleas under ***Bangert***, and his second challenge under ***Nelson/Bentley***.

*A. Young's First Challenge—The Circuit Court Failed to Explain the Elements and the Maximum Penalties of the Crimes*

¶22 "A defendant may invoke ***Bangert*** only by alleging that the circuit court failed to fulfill its plea colloquy duties." ***Id.***, ¶27. The court's duties include establishing that the defendant understands the elements and the maximum penalties of the crimes. ***Bangert***, 131 Wis. 2d at 267; ***Brown***, 293 Wis. 2d 594, ¶35; WIS. STAT. § 971.08(1)(a).[4] A ***Bangert*** motion warrants an evidentiary hearing if the defendant (1) shows specific defects in the plea colloquy and (2) "alleges that in fact the defendant did not know or understand the information that should have been provided at the plea colloquy." ***Howell***, 301 Wis. 2d 350, ¶27; *see also **State v. Pegeese***, 2019 WI 60, ¶26, __ Wis. 2d __, 928 N.W.2d 590. Whether a defendant is entitled to an evidentiary hearing on a ***Bangert*** motion is a question of law that we review independently. ***Howell***, 301 Wis. 2d 350, ¶¶30-31; ***Pegeese***, __ Wis. 2d __, ¶17 (whether defendant has shown that the plea colloquy was deficient such that a plea hearing requirement was violated is a question of law that this court reviews independently).

---

[4] WISCONSIN STAT. § 971.08(1)(a) provides that before a court accepts a plea of guilty or no contest, it shall determine that the plea is made "with understanding of the nature of the charge and the potential punishment if convicted."

¶23    Young alleges that the circuit court failed to explain, and that he did not understand, the elements and the maximum penalties of the crimes. We resolve this appeal by addressing only the first ***Bangert*** prong, whether the court failed to meet its plea colloquy duties with respect to explaining and ascertaining Young's understanding of the elements and maximum penalties of the crimes. *See* ***Pegeese***, __ Wis. 2d __, ¶28 n.6 (addressing only whether the circuit court met its obligations in conducting the colloquy where the defendant alleged that he did not understand what he alleged the court did not adequately explain).

¶24    Young first alleges that the circuit court failed to explain and ascertain that he understood the elements of the crimes, but the record shows to the contrary. Specifically, the plea colloquy transcript shows that the court read each element of each crime to Young and asked Young if he understood, and that each time, Young answered that he understood. Young also signed a plea questionnaire that stated that his attorney had explained to him the elements that the State would have to prove beyond a reasonable doubt if he went to trial.

¶25    Young acknowledges that the circuit court explained the legal elements of the four crimes to which Young agreed to plead but argues that the court's explanation was too cursory to satisfy legal requirements. Young acknowledges that he indicated that he understood the elements of each crime but argues that his mere answering each question "yeah" does not suffice to demonstrate that he understood the elements.

¶26    However, Young cites no legal support for the proposition that the circuit court must do more than what the court did here, namely, read each element of each crime and obtain Young's affirmation that he understood. Accordingly,

we do not further consider his argument as to the elements of the crime.  *See Industrial Risk Insurers*, 318 Wis. 2d 148, ¶25.

¶27    Second, Young alleges that the circuit court failed to explain and ascertain that he understood the maximum penalties for each crime, but the record refutes this argument as well.  At the plea hearing, the court correctly told Young the maximum penalty for each crime, including any penalty enhancers, and Young told the court that he understood.  In addition, the plea questionnaire that Young signed and that the court referenced at the plea hearing also identified the correct maximum penalties.  Young fails to cite any legal authority supporting the proposition that the court was required to do more, and, therefore, we do not further consider his argument as to the maximum penalties.  *See id.*

¶28    In sum, the record establishes that the circuit court fully and correctly explained the elements and maximum penalties of the crimes, and Young fails to present any legal authority supporting the proposition that the court was required to do more.  Accordingly, Young is not entitled to an evidentiary hearing on his *Bangert* challenge.

## B.  *Young's Second Challenge—Ineffective Assistance of Trial Counsel*

¶29    A defendant is not entitled to an evidentiary hearing under *Nelson/Bentley* if the defendant's motion fails to allege sufficient facts that, if true, would entitle the defendant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief.  *Howell*, 301 Wis. 2d 350, ¶75.  This court reviews independently whether a defendant's motion to withdraw a plea "'on its face alleges facts which would entitle the defendant to relief,' and whether the record conclusively demonstrates that the defendant is entitled to no relief."  *Id.*, ¶78 (citation and footnote omitted).

¶30 A *Nelson/Bentley* claim based on ineffective assistance requires a defendant to prove both deficient performance and prejudice. *Bentley*, 201 Wis. 2d at 311-12. If we determine that the defendant fails to make a sufficient showing on one of those two prongs, we need not examine the other. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). We resolve this appeal based on the deficient performance prong.

¶31 To prove deficient performance, a defendant must show that, under all of the circumstances, counsel's specific acts or omissions fell "outside the wide range of professionally competent assistance." *Id.* at 690. We review counsel's strategic decisions with great deference, because a strong presumption exists that counsel was reasonable in his or her performance. *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* A defendant's burden is to show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

¶32 "Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact." *State v. Maday*, 2017 WI 28, ¶25, 374 Wis. 2d 164, 892 N.W.2d 611. The circuit court's findings of fact will be upheld unless they are clearly erroneous. *Id.* "'[T]he circumstances of the case and … counsel's conduct and strategy' are considered findings of fact." *Id.* (alteration in original) (citation omitted). However, whether those facts constitute deficient performance and whether such deficient performance was prejudicial are questions of law that we review independently. *State v. Kimbrough*, 2001 WI App 138, ¶27, 246 Wis. 2d 648, 630 N.W.2d 752.

¶33    Young argues that his trial counsel provided ineffective assistance by advising Young to enter the pleas and by not adequately explaining the elements of the crimes and the maximum penalties.  We address and reject Young's arguments in turn.

### 1.  Improperly advising Young to enter the pleas

¶34    In Young's postconviction motion, Young alleges that he told his trial counsel before the plea hearing that he wanted new representation, and that counsel told him that he could seek new representation only after entering a plea. Young alleges that he then entered his pleas with the understanding that he could withdraw them after receiving a new attorney, but that the circuit court denied the plea withdrawal motion filed by replacement counsel.  Thus, Young alleges, trial counsel improperly advised him to enter the pleas.

¶35    Young testified as to these allegations in his presentencing plea withdrawal motion, and after an evidentiary hearing on that motion the circuit court rejected Young's testimony as not credible.  Trial counsel testified that: counsel did not coerce Young into entering a plea; counsel told Young that no one could force him to enter a plea and he did not have to if he did not want to;  Young "wanted to delay" entering a plea and they discussed Young's concerns and "he ultimately decided to go ahead and enter the plea"; if Young had not wanted to proceed with the plea hearing they would not have proceeded; and Young "certainly knew what was happening" with respect to the plea hearing.  The court found counsel's testimony credible.  Given the court's findings of credibility and fact at the presentencing plea withdrawal motion hearing, Young fails to show that trial counsel was deficient in advising him to enter the pleas and not withdrawing before the plea hearing.

### *2. Failure to adequately explain elements and maximum penalties*

¶36    Young also alleges in his postconviction motion that his trial counsel failed to "adequately" explain the elements and maximum penalties of the crimes and that he did not have enough time to ask trial counsel his questions about the elements and maximum penalties. However, Young does not identify what unanswered questions he had or what more trial counsel should have told him about the elements and maximum penalties. Thus, his motion fails to allege sufficient facts to "allow the reviewing court to meaningfully assess [his] claim." *See Bentley*, 201 Wis. 2d at 314.

¶37    Moreover, the record refutes Young's allegations. At the presentencing plea withdrawal motion hearing, Young testified generally that he did not understand what was going on in court but did not testify as to what specifically he did not understand, or that trial counsel failed to explain the elements and maximum penalties of the crimes to him. Young also testified that he never read or signed the plea questionnaire that contained his signature. Trial counsel testified that Young did not tell him that Young did not understand any aspect of the plea proceedings, and that they met the day of the plea hearing for at least an hour discussing Young's concerns. The circuit court found that trial counsel's testimony was more credible than Young's, that Young had met with trial counsel at least five or six times before the plea hearing, that Young signed the plea questionnaire as did counsel, and that Young understood the proceedings. The court also noted that Young had told the court at the plea hearing that his plea was voluntary and knowing after discussing it with trial counsel. The circuit court found that "nothing interfered with [Young] entering the plea."

¶38    In sum, Young fails to show that he is entitled to a hearing on his claims of ineffective assistance of trial counsel.

### III.  Ineffective Assistance of Replacement Counsel

¶39    Finally, Young argues that replacement counsel provided ineffective assistance by failing to raise all of the claims addressed above in the presentencing plea withdrawal motion, when the claims would have been reviewed under a more lenient standard.  This allegation fails for two reasons.  First, replacement counsel did raise Young's challenge to the plea colloquy as to the elements of the crimes, as well as Young's claim of ineffective assistance of trial counsel as to improperly coercing him to enter his pleas.  Second, we have explained above why Young's remaining claims—his claim of the lack of a factual basis for the plea, his challenge to the plea colloquy as to the maximum penalties, and his claim of ineffectiveness of trial counsel as to counsel's explanation of the elements and maximum penalties—lack merit.  Counsel is not deficient for failing to present claims that we have determined to lack merit.  *See* **State v. Wheat**, 2002 WI App 153, ¶14, 256 Wis. 2d 270, 647 N.W.2d 441 ("Failure to raise an issue of law is not deficient performance if the legal issue is later determined to be without merit.").

¶40    Accordingly, Young fails to show that he is entitled to a hearing on his claim of ineffective assistance of replacement counsel.

### CONCLUSION

¶41    For the reasons stated, we affirm.

*By the Court*.—Judgment and order affirmed.

16

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.